[No. 2474.   Decided April 19, 1897.]

I. P. Armstrong, *Respondent*, v. Leander Maybee *et al.*, *Appellants*.

LANDLORD AND TENANT — COVENANT TO KEEP IN REPAIR — TENANT'S
DUTY TO REBUILD.

A covenant in a lease that the lessee "will maintain the said mill machinery and buildings in as good condition and repair as the same are now in, and return the same to lessor at the expiration or termination of this lease in as good condition as the same are now in, reasonable wear and tear from ordinary use alone excepted," imposes the duty on the lessee to rebuild in case of the destruction of the buildings by accidental fire.

Appeal from Superior Court, King County.—Hon. Richard Osborn, Judge.   Affirmed.

*Richard Winsor*, and *George E. Morris*, for appellants.
*Hart & Hart*, and *Wm. Parmerlee*, for respondent.

The opinion of the court was delivered by

REAVIS, J.—Respondent brought action for breach of covenant in a lease of a shingle mill and machinery. Respondent leased to appellants a shingle mill, mill grounds, mill machinery, dry house, office and office fixtures, for a term beginning the 13th of October, 1894, and ending the 1st day of January, 1896, unless the lease should be terminated by a sale of the property by the lessor. After stipulations for the payment of rent, the following covenants were stated:

"The lessee shall maintain all of the machinery and buildings of said mill in as good condition and repair as the same now are in and return the same to the lessor at the expiration of said lease in as good condition as the same are now in, reasonable wear and tear excepted. . . . That he (lessee) will maintain all the said mill, machinery and buildings in as good condition and repair as the same are now in, and return the same to lessor at the expiration or termination of this lease in as good condition as the same are now in, reasonable wear and tear from ordinary use alone excepted."

There was a further stipulation that the lessee should, during the continuance of the term, maintain and keep employed and on duty at and about the mill a day watchman and a night watchman, whether the mill was operated or not. In March, 1895, the mill was entirely destroyed by fire. Respondent alleged in his complaint that this fire was because of appellants' negligence. This was denied in the answer, but no question is raised here upon this point. The court instructed the jury as follows:

" The court instructs you that the lease introduced in evidence and set out in the plaintiff's complaint between

these parties imposes an obligation upon the defendant to rebuild the buildings and the mill in case it should be burned during the tenancy. In other words, he was under the obligation to return that mill to him in as good condition as it was at the time he received it, reasonable wear and tear excepted."

Appellants contend that the instruction was wrong, and counsel have, with much industry and learning, cited many authorities in support of appellants' claim that the language written in the lease does not constitute a covenant to rebuild in case of fire by accident and without fault of the lessee. Without reviewing in full the cases presented in the respective briefs of counsel here, but stating our conclusion from an examination of them, we are of opinion that, without an express covenant to rebuild, the lessee is under no obligation to do so. We understand this to have been the settled law since the time of Edward the Fourth, first in England, and followed in this country. But either lessor or lessee may make any agreement which is lawful relative to repairs during the term, or to rebuild in the event of the destruction of the buildings, and when such covenant is made it must be enforced. In the lease under consideration the terms used constitute an express covenant to repair. Taylor on Landlord and Tenant (8th ed.), § 364, states the rule which is approved by the great weight of authority:

" Under an express covenant to repair, the lessee's liability is not confined to cases of ordinary and gradual decay, but extends to injuries done ·to the property by fire, although accidental; and even if the premises are entirely consumed, he is still bound to repair within a reasonable time. And the principle applies to all damages occasioned by a public enemy, or by a mob, flood, or tempest. Thus, where the covenant is *to repair* in general terms, or *to repair, uphold and support*, or however otherwise phrased,

if it undertakes the duty of repair, it binds the lessee to rebuild if the premises are destroyed. For this reason, and in order to afford some protection to the tenant, it is customary to introduce into the covenant to repair, an exception against accidents by fire, tempest, or lightning."

Wood on Landlord and Tenant (2d ed.), § 370, declares:

"If a lessee covenants to repair and keep the premises in repair during the term, not excepting damage by fire or the elements, he is bound to rebuild them if burnt down by accident, negligence, or otherwise. It is of no importance how the covenant is worded; unless it is qualified, the lessee is bound to rebuild in case the buildings are destroyed by fire or other casualty during the term; the tenant, if the burden of the covenant rests upon him, or the landlord, if he is the covenantor, must rebuild. Thus, a covenant ' to repair, uphold and support,' or to ' well and sufficiently repair,' or to keep in repair and leave as found, or to ' repair and keep in repair,' to keep in ' good repair, natural wear and tear excepted,' to make ' all necessary repairs,' to deliver up ' in tenantable repair,' or to ' deliver up the premises in as good a condition as they now are,' all impose upon the covenantor the duty of rebuilding or restoring premises destroyed or injured by the elements. . . ."

The case of *Warner v. Hitchins*, 5 Barb. 666, cited by appellants, was upon the following clause in a lease:

"And also at the expiration of the lease to surrender up the possession of the said premises in the same condition the same now are, natural wear and tear excepted."

The lease contained no other express stipulations on the part of the defendants. The court in that case held that this clause did not constitute an express stipulation to repair.

And thus, in the case of *McIntosh v. Lown*, 49 Barb. 550, cited by appellants, the court said:

" The defendants' covenant in the lease, 'to keep the buildings and fences in good repair, except natural wear and tear,' bound them to rebuild in case of accidental destruction by fire or otherwise."

And the lessee was there held liable in damages for the value of a barn destroyed, which he did not rebuild. In this case the court re-states the views held in 5 Barb., *supra*, as follows:

" Some authorities hold that where the covenant by the lessee is to repair and leave the premises in the same state as he found or received them, or language to that effect, he is merely required to use his best endeavors to keep them in the same tenantable repair, and is not bound, by such a covenant, to restore buildings destroyed, by fire or otherwise, during the term, without his fault. This is in consequence of a construction given to the covenant, that the lessee is *so* to repair or keep in repair the buildings, etc., *as* to leave the demised premises in the same state as he received them; and such I think is the settled law. But where the covenant is to repair or keep in repair generally, the buildings, etc., without the qualifying words mentioned, all the authorities hold that it requires the tenant to rebuild, etc., in case of the accidental destruction of the buildings, etc."

The case of *Van Wormer v. Crane*, 51 Mich. 363 (16 N. W. 686, 47 Am. Rep. 582), was upon a lease containing the exception of " damages by the elements " in the covenant to repair, and it was held by Judge Cooley that destruction of a building by accidental fire was included within the exception. We agree with the rule of construction stated by Judge Sherwood in the concurring opinion in that case, that:

" In construing the covenants contained in a lease the cardinal rule is that the intention of the parties shall govern; and the courts will not extend or enlarge the obligation of the lessee beyond the plain meaning of the language used and the intention existing at the time it was made;

and if there is not an express stipulation to the effect to restore buildings and other property leased, destroyed by casualties from fire or water, without fault or neglect on the part of the tenant, the loss must fall upon the landlord or reversioner."

But in the case at bar we are unable, from any fair reading of the whole lease, to find any doubtful language or anything in the circumstances of the parties which would require other than one construction of the language used. They chose to use language and terms which have had a received meaning in the courts for generations, and though the phraseology may slightly differ from that of contracts under consideration in some of the adjudicated cases, we cannot see any distinction in the meaning. We are not able to find any qualification of the general covenant to repair in this lease. The contract is one before the court for construction and enforcement as the lessor and lessee have made it. Our conclusion is that it imposed on the lessee the obligation to rebuild the mill, which was destroyed by fire.

The judgment of the superior court is affirmed.

ANDERS and GORDON, JJ., concur.