[No. 28920. Department One. March 20, 1943.]

O. A. ANDERSON, *Appellant*, v. M. FERGUSON *et al.*, *Respondents.*[1]

[1]Reported in 135 P. (2d) 302.

*Joseph H. Johnston,* for appellant.

*Wm. J. Conniff* and *Stanley A. Taylor,* for respondent.

STEINERT, J.—The owner and lessor of certain real estate, on which were located several buildings used for shingle mill purposes, brought suit against his lessees upon their covenants to repair and to pay rent. In his complaint, he sought to recover the value of one of the buildings, which had been entirely destroyed by fire during the term of the lease, and, further, to recover the total amount of rent which would accrue under the lease during the unexpired portion of the term. The cause was tried to the court without a jury, and, at the conclusion of the plaintiff's case, the court granted the defendants' motion to dismiss the action and later entered judgment of dismissal. The plaintiff lessor appealed.

The lease upon which this action is based, in so far as its provisions are material here, reads as follows:

"THIS INDENTURE, Made this 26th day of November, A.D. 1940

"WITNESSETH, That O. A. Anderson, widower, . . . hereinafter called the lessor, does hereby lease, demise and let unto M. Ferguson and Thos. B. Pattison . . . hereinafter called the lessees

The following described real property [here follows a description by metes and bounds, with references made to several existing structures]; including the drykiln building and shingle machine building in their present condition. The lessees to repair said buildings to suit their own purpose or use at their own expense.

"To HAVE AND TO HOLD, for the term of Five Years to-wit: from the 26th day of November, A.D. 1940, to the 30th day of November, A. D. 1946 [sic] yielding and paying therefor the monthly rent of Ten DOLLARS, lawful money of the United States of America.

"The said lessee promises to pay the said rent as follows: Ten Dollars December 1st, 1940, and a like amount on the 1st day of each calander month to the end of the term and agrees to quit and deliver up the premises to the lessor, his agent or attorney, peaceably and quietly at the end of the term, in as good order, condition and repair as the reasonable use and wear thereof will permit. . . ."

The lease contained no exception clause relating to damage by fire or the elements.

The improvements on the premises at the time of the execution of the lease consisted of a shingle mill building large enough to accommodate four machines, a knee bolter, a swing cut-off, a log slip to the pond, a machine room, and a filing room; a lean-to; and a dry kiln.

The respondents entered into possession of the leased property, moved in some machinery, built two conveyors, and thereafter operated the shingle mill and paid the rent until May 2, 1941, when a fire broke out

on the premises and, through no fault of any of the parties herein, entirely destroyed the shingle machine building and the structures connected with it, but did not damage the dry kiln. Since the fire, respondents have conducted no operations on the premises and have visited them but infrequently, although some of their machinery is still located thereon, subject to an attachment levied by the sheriff. The shingle machine building and structures connected with it have never been rebuilt, and respondents have refused to pay any further rent.

Conceiving that he was entitled to recover for the destruction of the shingle machine building and for continuing rent under the lease, appellant instituted this action. He alleged in his complaint, and respondents admitted in their answer, that the property had no rental value after the fire, and that appellant could not lease the premises for any sum. According to the evidence introduced by appellant, the value of the shingle machine building immediately before the fire was eight hundred fifty dollars, and the cost of rebuilding it would amount to about twelve hundred dollars.

The first question presented upon the appeal is whether or not, under the covenants contained in the lease, the respondents are required to rebuild the shingle machine building. This question requires a close analysis of the language in which the covenants of repair are set forth. Before entering upon that, however, it may be well to have before us the rule at common law relative to general covenants to repair demised premises. The rule and its effect have been fully and explicitly stated in several well-known texts and commentaries, from two of which we quote. In 3 Thompson, Real Property (Perm. ed. 1940) p. 516, § 1345, it is said:

"It is the established rule of the common law that an express covenant to repair binds the covenantor to make good any injury which human power can remedy, even if caused by storm, flood, fire, inevitable accident, or the act of a stranger. The foundation of the rule is the doctrine that a person who has bound himself unconditionally can not be relieved, and that a covenant to repair is equivalent to a covenant to rebuild. Although a man may be excused from a duty imposed on him by law, if he is disabled from performing it without any fault of his own; yet when, by his own contract, he creates a duty or charge upon himself, he is bound to make it good, notwithstanding any accident by inevitable necessity. If it is urged that this is a hardship upon the lessee, the answer is that it was his own folly to not stipulate against such inevitable consequences. So, the covenant of a lessee or lessor to repair is not discharged by the destruction of the premises by lightning, fire or wind."

Further, on page 523, § 1347, it is said:

"The general rule under the common law is that, in case the lessee covenants to keep the leased premises in repair and he does not qualify the same by special provision or exception, he is obligated under such covenant to rebuild even though the building is destroyed through no fault of his own. Under this rule, it is generally held that, if the lessee covenants to deliver up the demised premises at the end of the term in good condition or repair, he is not excused or discharged from liability by reason of the accidental destruction of the premises by fire or other casualty without his fault."

Many cases supporting the text are cited in the footnotes. In the body of the section from which we have last quoted, however, the author further says that in some jurisdictions the rule has been changed by statute, and in others it has been rejected entirely. This latter statement is also supported by citations in the footnotes.

In 32 Am. Jur. 675, Landlord and Tenant, § 791, appears the following statement:

"It was the well-settled early common-law rule that a tenant's general covenant to repair the demised premises binds him under all circumstances, even though the injury proceeds from an act of God, from the elements, or from the act of a stranger or of a public enemy, and if he desires to relieve himself from liability for injuries resulting from any of the causes above enumerated, or from any other cause whatever, he must take care to except them from the operation of his covenant. Although in some jurisdictions the rule has been modified by statute or by the courts, there is much authority to the effect that a general covenant to keep the leased premises in repair, where not qualified by special provisions or exceptions, imposes upon the tenant the duty of rebuilding a structure upon the leased premises which accidentally falls or is in some manner destroyed, even though without the fault of the tenant. This rule has been laid down as to destruction by fire, although a contrary view has also been taken as to such destruction. If the tenant covenants to keep the premises in repair, and also covenants to insure them for a specific amount against fire, and they are burned down, it has been held that the tenant's liability on the former covenant is not limited to the amount to be insured under the latter covenant."

These statements of the paragraph just quoted are likewise fortified by the citation of cases in the footnotes to the text. Similar statements will also be found in 3 Tiffany, Real Property (3d ed.) pp. 567, 568, § 905; 2 Underhill, Landlord and Tenant, p. 882 et seq., § 528; 1 Taylor, Landlord and Tenant (9th ed.), p. 454, § 364 (the language of which is cited with approval in *Armstrong v. Maybee,* 17 Wash. 24, 48 Pac. 737, 61 Am. St. 898); 1 Wood, Landlord and Tenant (2d ed.), p. 808, § 370 (likewise cited with approval in *Armstrong v. Maybee, supra*); 36 C. J. 145, Landlord and Tenant, § 782. A full discussion of the subject, ac-

companied by an extensive list of cited cases, will be found in a lengthy annotation (1926) appearing in 45 A. L. R. 12, particularly at pages 58 to 67.

So far as we have been informed by briefs of counsel, or been able to discover from an independent search, there are but two cases in this jurisdiction which touch upon the question now under consideration: *Armstrong v. Maybee,* 17 Wash. 24, 48 Pac. 737, 61 Am. St. 898, and *Arnold-Evans Co. v. Hardung,* 132 Wash. 426, 232 Pac. 290, 45 A. L. R. 9. Both of these cases are cited by the authors of the texts above quoted as supporting the common-law rule therein stated. The *Armstrong* case presented a state of facts quite similar to those involved here, except in one vital particular, to which we shall refer specifically in our analysis of the covenant of repair relied upon by appellant.

In the *Armstrong* case, the plaintiff lessor brought action against his lessee for breach of covenant in a lease covering a shingle mill, dry house, office, mill machinery, and office fixtures, for a term of about fifteen months. The covenants upon which the action was grounded read as follows:

"The lessee shall *maintain* all of the machinery and buildings of said mill *in as good condition and repair as the same now are in and return the same* to the lessor at the expiration of said lease *in as good condition as the same are now in,* reasonable wear and tear excepted. . . . That he (lessee) *will maintain* all the said mill, machinery and buildings *in as good condition and repair as the same are now in, and return the same* to lessor at the expiration or termination of this lease *in as good condition as the same are now in,* reasonable wear and tear from ordinary use *alone* excepted." (Italics ours.)

About five months after the execution of the lease, the mill was entirely destroyed by fire. No question of negligence on the part of the lessee was raised at the

trial. The trial court instructed the jury that the lease imposed upon the lessee an obligation to rebuild the mill in case it should be burned during the tenancy, and that the lessee was under the obligation to return the mill to the lessor in as good condition as it was in at the time the lessee received it, reasonable wear and tear excepted. The lessee's appeal from an adverse judgment raised the question of the correctness of that instruction. In its approach to that question, this court proceeded upon the principle that, without an express covenant to rebuild, the lessee is under no obligation to do so. Further along in the opinion, the court approved the rule of construction stated by Judge Sherwood in a concurring opinion in the case of *Van Wormer v. Crane,* 51 Mich. 363, 16 N. W. 686, 47 Am. Rep. 582, that

"In construing the covenants contained in a lease the cardinal rule is that the intention of the parties shall govern; and the courts will not extend or enlarge the obligation of the lessee beyond the plain meaning of the language used and the intention existing at the time it was made; and if there is not an express stipulation to the effect to restore buildings and other property leased, destroyed by casualties from fire or water, without fault or neglect on the part of the tenant, the loss must fall upon the landlord or reversioner."

However, although adopting the general rule of construction as just quoted, this court held, in the *Armstrong* case, that the particular language of the covenants constituted an express general covenant to repair and imposed on the *lessee* the obligation to rebuild the mill which had been destroyed by fire. Accordingly, the judgment of the trial court was affirmed. We shall have occasion a little later to compare the covenants of the lease in the *Armstrong* case with those contained in the lease here under consideration.

In the *Arnold-Evans Co.* case, *supra,* the provisions of the lease with reference to repairs read:

" 'And It Is Hereby Agreed, that the parties of the second part [lessees] are to *maintain and keep said building in good repair and return same* at the expiration of this lease to the party of the first part [lessor], its heirs, administrators or assigns *in as good condition as at the present time,* excepting that first party will make repairs to the *exterior* of premises occasioned by reasonable use and wear thereof.' " (Italics ours.)

The lease contained a further stipulation to the effect that if the premises should be destroyed by fire or the lessees should be unable to occupy the premises because of fire, then the lessees should be entitled to a return of the unearned portion of the rent paid by them in advance.

Sometime thereafter, the boiler in the heating plant rusted out and required the installation of a new one. At the request of the lessees, a contractor installed a new boiler and later brought suit against both the lessees and the lessor for the contract price thereof. The lessees cross-complained against the lessor and asked that, if the contractor should obtain judgment against them, they in turn have judgment against the lessor. From a judgment adverse to them, the lessees appealed. In affirming the judgment, this court quoted from 16 R. C. L. 1088, § 605, which sets forth the rule as we have quoted it above from 32 Am. Jur. 675, Landlord and Tenant, § 791, and announced its conclusion in one short paragraph reading as follows:

"Though the law may seem harsh as applied to this particular case, yet, for the general good, it must be maintained, and landlords and tenants alike must be left to guard against unusual conditions by the terms of their contracts."

Thus, it appears to be the settled law in this state that an unconditional or unqualified covenant on

the part of the lessee to maintain and keep premises leased by him in good repair or in as good condition as that existing at the time specified in the lease, and to return the premises at the expiration or termination of the lease in such equivalent condition, obligates the lessee to rebuild in case the buildings leased are destroyed by fire or other casualty during the term. So far as we have been advised, there is no statute in this state modifying this rule.

The crucial question here presented, then, is whether or not the phraseology of the particular covenant under consideration is sufficient to constitute a general covenant on the part of the lessees to repair and, at the expiration of the lease, return the premises to the lessor in as good condition as that existing at the time the lease was made and right of possession given thereunder.

A comparison between the lease here involved and those in the *Armstrong* and *Arnold-Evans* cases, *supra,* brings to light some very distinctive and differentiating features. In each of the two cases last cited, the lessee obligated himself, by the terms of the lease, to *maintain and keep* the premises in as good condition as their then present condition, and to return them to the lessor, at the expiration of the term, *in as good condition as they were in at the time designated in the lease.* The covenants were clear, specific, and unconditional, constituting express covenants to repair. On the other hand, in this case, the covenant did not by its terms require the lessees to *maintain or keep* the premises in any particular condition whatever *during* the period of the term. The typewritten provisions of the lease simply recited that the lessees were "to repair said buildings to suit their own purpose or use at their own expense." That provision merely obligated the lessees to install and pay for such repairs as suited their

own purposes in the operation of the plant. It did not obligate them to maintain or keep the premises generally in the condition in which they had received them.

Furthermore, the latter portion of the covenant (which was a part of the *printed* form of the lease) did not provide that the premises were to be returned in as good order, condition, and repair as they were in when the lease was executed or possession taken thereunder, but only "in as good order, condition and repair as the reasonable use and wear thereof will permit." Whatever meaning may be given to the words "reasonable use and wear," as employed in the lease, it is at least certain that the covenant designated no point of time for the admeasurement of the condition in which the premises were to be returned to the lessor.

Under the provisions of the lease, the lessees were entitled to the possession and "reasonable use" of the premises for the entire term, regardless of the fact that in the meantime a fire had destroyed one of the buildings thereon. Since the fire was a fortuity occurring without fault on the part of the lessees, it can as logically be said that the lessees were required merely to return the premises to the lessor at the expiration of the term in such "good order, condition and repair" as reasonable use during the period *after* the fire would permit, as to say that they were required to deliver the premises in such "good order, condition and repair" as reasonable use by them *before* the fire would permit. In other words, "reasonable use" of the premises by the lessees can be said to permit, and therefore to require, only such return thereof as was possible by reason of a fire occurring without fault on the part of the lessees.

The covenant is at least capable of two constructions, but any ambiguity therein must be resolved in favor of the lessees, for it is well settled that, where a lease is capable of more than one construction, the

courts will adopt that construction which is most favorable to the lessee. *Salzer v. Manfredi,* 114 Wash. 666, 195 Pac. 1046; *Diettrich v. Newberry Co.,* 172 Wash. 18, 19 P. (2d) 115; *National Bank of Commerce of Seattle v. Dunn,* 194 Wash. 472, 78 P. (2d) 535; *Murray v. Odman,* 1 Wn. (2d) 481, 96 P. (2d) 489.

In any event, the common-law rule is so harsh that it ought not to be applied unless the language of the lease clearly requires it. While a lessee may bind himself by agreement to rebuild a structure which through no fault on his part is destroyed by fire during the term of the lease, the obligation to do so must either appear by explicit language in the lease or else clearly come within the terms of a general covenant to repair and return the premises to the lessor, at the expiration of the term, in as good condition as they were in at the time the lease was given and possession taken thereunder. The covenant in this instance did not satisfy that standard of certainty and requirement, and we therefore hold that the trial court properly dismissed appellant's first cause of action.

The second question presented upon the appeal is whether, under the covenant to pay rent as recited in the lease, respondents were obligated to continue paying rent after the destruction of the shingle machine building, which was the main building on the leased premises. The covenant here under consideration required the respondents to "pay the said rent as follows: Ten Dollars December 1st, 1940, and a like amount on the 1st day of each calander month to the end of the term." It is to be borne in mind that the lease in question covered not merely a building or portion of a building, but a certain described parcel of real estate with the buildings and improvements thereon.

Again we shall refer to the rule obtaining at common law. In 32 Am. Jur. 402, Landlord and Tenant,

§ 493, the rule and the reasons underlying it are stated at length, as follows:

"According to the common law as declared by the English courts and by a majority of the American courts, a tenant remains liable for the agreed rent of the demised premises *so long as any part thereof remains in existence capable of being occupied or enjoyed by him,* irrespective of injury or destruction by fire or other casualty. Thus, in the absence of a provision in the lease, or of a statute, to the contrary, the destruction of buildings upon the leased premises during the term by fire, inevitable accident, the violence of nature, or a public enemy, not so complete as to leave no part of the subject matter of the lease in existence, does not relieve the tenant from the obligation of his covenant to pay rent, or entitle him to an abatement of a proportional part of the rent. In case of a lease of lands with the right of quarrying stone, the destruction of a limekiln on the lands does not relieve from liability to pay rent even though the kiln was the principal inducement and the principal source of profits. It is a well-settled rule of the common law that in case of a lease of a building and the land subjacent or adjacent thereto, without any provision for the relief of the tenant in the event of the destruction of the building and without a covenant by the lessor to rebuild, the accidental destruction of the building by fire or other casualty does not affect the continued liability of the lessee for the subsequently accruing rents under an express agreement to pay rent for a definite period; a fortiori, rents paid in advance may not be recovered back. A reason for the general rule stated above is that although the use of the building may be the chief element of value or consideration for the payment of rent, the interest in the soil remains to support the lease, and since there is no implied obligation on the landlord to repair or rebuild, the tenant's liability for the accruing rents continues. Other reasons for the rule are that since the destruction is usually by means of an accident for which neither the lessor nor the lessee is responsible, it is only equitable to divide the loss; that since the lessor must lose the property, the

lessee should lose the term; and that exemption from loss would tend to make the tenant less careful, since in many cases he would be benefited by the destruction of the premises if the result would be to free him from the lease. For the same reasons, equity refuses to relieve against a covenant to pay rent, although the premises are consumed by fire, destroyed by the elements, or encroached on by the sea." (Italics ours.)

In 36 C. J. 325, Landlord and Tenant, § 1130, it is stated:

"At common law a lessee of premises which are accidentally destroyed subsequent to the making of the lease cannot be relieved from an express covenant to pay rent, unless he has stipulated in the lease for a cessation of the rent in such case, or the lessor has covenanted to rebuild; nor will equity relieve from an express covenant, except in case of fraud, accident, or mistake."

Many cases supporting the rule as above stated are cited in the respective footnotes to the texts. See, also, 3 Tiffany, Real Property (3d ed.), 567, § 905; 2 Underhill, Landlord and Tenant, 1339, § 788; 1 Taylor, Landlord and Tenant (9th ed.), 468, § 375; 2 Wood, Landlord and Tenant (2d ed.), 1032, § 448.

All of these textual authorities and the cases supporting them, however, recognize that the common-law rule as previously stated presupposes that some part of the premises remains in existence for occupation by the tenant, irrespective of the destruction. If the destruction of the premises is complete, and the subject matter of the thing leased no longer exists, the liability of the tenant for rent ceases. This exception to the general rule most frequently applies in cases where the lease covers merely an apartment or a single room in a building. Thus, in *Porter v. Tull*, 6 Wash. 408, 33 Pac. 965, 36 Am. St. 172, 22 L. R. A. 613, where the lessees of certain rooms and portions of a building known as the Tull block, in Spokane, had paid rent

in advance for the month of August, and the building was destroyed by fire on the fourth day of that month, it was held that the lessees were entitled to recover the money paid by them for that portion of the month remaining after the fire. The theory upon which the decision rested was that the consideration for the month's rent paid in advance was the use and possession of the building for the corresponding month, and the lessor was therefore under an implied obligation to furnish the lessees with the use of the building for the time for which the lessees paid the rent.

That case, however, does not present a factual situation similar to the one here, nor does it in any way trench upon or change the general common-law rule stated above. The lease in the present case did not cover simply a building, or parts of a building, apart from the freehold, but covered, rather, a certain definitely described parcel of real estate, together with certain buildings thereon. The entire property was not destroyed by fire, but merely one of the buildings, although that was the main building. Nevertheless, the interest in the soil and the other structures thereon remained to support the lease; and, since there was neither an express nor an implied obligation on the part of the lessor to repair or rebuild, the lessees' liability for the accruing rents, under the common-law rule, continued. We have no statute in this state modifying the rule at common law, nor has there been called to our attention any case which declares a different rule in this jurisdiction. We are not now inclined to depart, by judicial declaration, from a rule so well settled and so thoroughly accepted. We therefore hold that the trial court erred in dismissing appellant's second cause of action.

On the present state of the record, however, we are unable to dictate the amount of the judgment to be

entered, for the reason that it does not clearly appear from the evidence or from any finding by the trial court whether or not the respondents have as yet completely abandoned the premises or that any of the parties has terminated the lease. If the respondents have abandoned the premises, repudiating the lease, then the appellant will be entitled to recover the full amount of unpaid rent for the entire term, less any rental which appellant reasonably could have obtained for the premises during the remainder of the term after the date of such abandonment. If, on the other hand, respondents have not abandoned the premises or repudiated the lease, or if appellant has himself terminated the tenancy, then the appellant will be entitled to recover only the amount of rent which has accrued under the terms of the lease, or was owing and unpaid at the time the lease may have been terminated by the appellant.

The judgment is reversed with respect to appellant's second cause of action, with direction to the trial court to proceed further in accordance with the views herein expressed.

SIMPSON, C. J., BEALS, and JEFFERS, JJ., concur.

MILLARD, J. (dissenting)—It is appellant's position that there has been, in effect, a total destruction of the buildings; therefore, the property now has no rental value. That being so, I can not yet subscribe to a rule holding the tenants liable for rental of that property for unexpired term of their lease.