[No. 29846. Department One. September 6, 1946.]

PUBLISHERS BUILDING COMPANY, *Respondent,* v.
MARIE MILLER, *Appellant.*[1]

[1]Reported in 172 P. (2d) 489.

*A. O. Colburn*, for appellant.

*Witherspoon, Witherspoon & Kelley*, for respondent.

STEINERT, J.—The owner and lessor of certain premises brought suit against a number of defendants for breach of covenant of a lease, seeking in the action to recover the cost of repairing a furnace located in the leased property. The defendants, consisting of the tenant in possession and certain prior tenants, all being connected with and concerned in the lease, answered separately, denying liability.

The cause proceeded to trial before a jury. Defendants' motion for dismissal of plaintiff's case at the close of its evidence, and plaintiff's subsequent motion for a directed verdict, were each denied. The jury returned a verdict in favor of all of the defendants. Plaintiff moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The court granted the first of these motions and entered judgment in favor of the plaintiff against all of the defendants, in the amount of the cost of the repairs, together with an attorney's fee as provided for in the lease; the judgment further directed that, if any part of the award should be paid by any of the prior tenants, such person should have judgment to that extent against the tenant in possession. From that judgment, the possessory tenant alone appealed.

Respondent, Publishers Building Company, is the owner of a three-story building, known as the Gandy block, in Spokane. The ground floor of the building is divided into store rooms and is used for store purposes. The second and third floors are fitted for and used as a hotel. In the

basement of the building is a furnace room equipped with a cast iron sectional boiler, by means of which the entire building is heated.

On August 31, 1942, the respondent entered into a written lease with defendants Carl Altin, William V. McKnight, and Mayme C. McKnight, the wife of William V. McKnight, whereby respondent leased to Altin and the McKnights, denominated "lessee," the second and third floors, together with the basement furnace room of the building, to be used as a hotel only, for a term of three years beginning September 1, 1942, and ending August 31, 1945.

The material portions of the lease, so far as this action is concerned, read as follows:

"Lessee[s] agrees to furnish heat for the storerooms on the first floor of the building in which the leased premises are situated, at Lessee's sole expense. . . .

"Lessee agrees . . . at his own expense . . . to keep the premises, including plumbing, in good repair, and to save Lessor harmless from any damage or claim of damage due directly or indirectly to the condition of the premises, including damage resulting from plumbing or in any manner from pipes or coils of any and all kinds, or by reason of snow, ice or other obstructions, and should Lessee neglect or fail to comply with each, all and every of the covenants, conditions or requirements just specified, Lessor may, at his option, in addition to any other right he [it] may have, cause the same to be done and all costs and expenses incident thereto shall be paid by Lessee. Lessee agrees at the end of the term to quit and surrender the premises in good and clean condition (reasonable wear and damage by fire excepted). . . .

"Lessee accepts the premises herein leased in their present condition, and without any agreement, promises or representations, and acknowledges that he is acting entirely on his own judgment, and not relying on any representations, promises or agreements made to him."

It will be noted that the lease specifically provides (1) that the "lessee" agrees, at his sole expense, to furnish heat to the store rooms on the first floor of the building; (2) that he agrees, at his own expense, to keep the premises in good repair and (3) save the lessor harmless from any

damage or claim of damage due directly or indirectly to the condition of the premises; (4) that should the lessee neglect or fail to comply with each or all of the covenants, conditions, or requirements previously specified, the lessor may at its option "cause the same to be done" at the expense of the lessee; (5) that the lessee agrees at the end of the term to quit and surrender the premises in good and clean condition, reasonable wear and damage by fire excepted; and (6) that the lessee accepts the premises in their condition as of the time of the execution of the lease, acknowledging that he was acting entirely on his own judgment and not relying on any representations, promises, or agreements made to him.

On December 1, 1942, the named lessees, Altin and the McKnights, in writing assigned the lease to the defendants E. W. Skerrett and Hazel O. Skerrett, his wife. The assignment, which was subscribed by both the assignors and the assignees, obligated all of the parties thereto to perform all of the covenants, provisions, and conditions of the lease.

On June 1, 1943, the defendants McKnight and Skerrett by a similar writing assigned the lease to the appellant herein, Marie Miller, with like obligations imposed upon the parties thereto. Appellant took possession of the premises and was in charge thereof at the time of the occurrence of the event hereinafter related and also at the time of the trial of this action in April, 1945, which was nearly five months prior to the expiration of the term of the lease.

In the furnace room of the basement was a boiler which had been installed about ten years previously and which, according to the evidence, would with proper care have lasted practically a lifetime. The boiler was of the cast iron type, consisting of eleven sections, and was equipped with the usual gauge and petcocks on the side thereof. A fireman was regularly employed by the appellant to operate the furnace and thereby produce heat for the entire building, including both the hotel and the store rooms on the ground floor. The particular fireman involved in this case, Jess McDonald, had been in the employ of the appel-

lant for only about a week at the time of the occurrence here in question.

Late in the afternoon of February 10, 1944, McDonald fired the furnace and shortly thereafter went up to one of the rooms in the hotel on some errand. On his return about thirty minutes later, he discovered that the front of the boiler was cracked, and that no water stood in the gauge. In that condition, the furnace could not be operated. Respondent's rental agent was immediately notified, and, at his direction a plumbing and heating concern sent its men to look into and, if possible, remedy the situation. The furnace was taken apart that evening, and it was then found that four sections of the boiler had been damaged to such an extent as to require replacement with new sections.

There is no dispute as to the fact that the damage was caused by the lack of water in the boiler after the furnace was fired, although there is a serious dispute as to what caused the water to run low and as to just when the gauge reflected that condition. Upon that question, it is the contention of the respondent that appellant's fireman negligently fired the furnace at a time when there was little or no water in the boiler, and that an observation of the gauge or a turn of the petcocks would have readily disclosed to him the condition. Appellant's evidence was to the effect that, at the time the furnace was fired, the gauge showed water standing at the proper height, and she claims that the damage was due either to a structurally defective, or else a worn-out, condition of the boiler.

In view of the fact that heat had to be supplied immediately for the various parts of the building and that permanent repairs could not be made at that time, the cracks were temporarily cemented, at an expense of approximately eighty dollars, which was paid by the respondent. Later, in the summer of 1944, while appellant was still in possession of the premises, respondent, through a contractor, made permanent repairs by replacing the four damaged sections of the boiler with new ones, at a cost of approximately $717, which the respondent also paid.

Asserting its claimed rights under the lease, respondent made demand upon the appellant and upon the respective predecessor tenants, defendants herein, for reimbursement of the total amount so expended by it. They, however, disclaimed all liability and refused to comply with the demand. Respondent thereupon instituted this action.

Respondent's complaint is based upon a dual theory or, more precisely, upon a specific theory emphasized by a contributing factor. The complaint alleged (1) a breach of the covenant to repair contained in the lease, and (2) negligence on the part of appellant's employee, McDonald, in firing the furnace at a time when water was absent from, or low in, the boiler, thereby causing the damage.

The evidence in the case, as reflected by the testimony of the witnesses, was for the most part directed to the question of negligence on the part of the fireman. There was evidence on that issue which, in our opinion, would have fully warranted a finding either way, that is, that the fireman was negligent or, on the contrary, that he was not negligent. That issue was submitted to the jury, and its verdict established the fact, so far as this case is concerned, that the fireman was not negligent. We will therefore not discuss that question any further, but will confine ourselves to the question of the rights and duties of the parties under the terms of the lease and the covenants therein.

The question for our consideration is purely one of law, involving an interpretation of the lease and a determination of the obligation and responsibility of the tenant under the particular covenants thereof.

As previously stated, appellant was required, by the terms of the lease agreement, to furnish heat for the store rooms on the first floor of the building. That was part of the consideration for the execution of the lease by the respondent. It was also, of course, the responsibility of the appellant to furnish heat to the occupants of the hotel conducted by her in the same building. To accomplish those purposes satisfactorily, it was necessary that the furnace, or boiler, be kept in a good state of repair; for, otherwise, adequate heat

could not be furnished to the tenants of the store rooms or to the occupant guests of the hotel.

Respondent took pains to incorporate in the lease, and the appellant by her written acceptance of the assignment thereof bound herself to perform, a covenant whereby she as lessee agreed, at her own expense, to keep the premises "in good repair." The boiler was located in the basement furnace room and, with its pipes and other connections, constituted a part of the premises which were leased to the appellant. The respondent took further pains expressly to relieve itself of any suggestion or implication that it would, or was required to, make any changes in or repair to the boiler, for it was specifically provided that the lessee accepted the premises in their then condition, acknowledging that she was acting entirely on her own judgment and not relying on any representations, promises, or agreements made to her. In other words, she voluntarily placed herself in a position to which the maxim of *caveat emptor* is applicable. *Robinson v. Wilson*, 102 Wash. 528, 173 Pac. 331; *Arnold-Evans Co. v. Hardung*, 132 Wash. 426, 232 Pac. 290, 45 A. L. R. 9.

The specific provision in the lease which obligated the lessee to keep the premises in good repair was a general covenant to repair. The other covenants, quoted and enumerated above, lend added weight to the general covenant.

In the absence of any qualifying language, a general covenant of a tenant to repair obligates him to make all necessary repairs, even to the point of rebuilding in case the premises are destroyed.

In the early case of *Armstrong v. Maybee*, 17 Wash. 24, 48 Pac. 737, 61 Am. St. 898, this court had occasion to examine and state the law upon the subject. In that case, the plaintiff leased to the defendant a shingle mill, mill grounds, mill machinery, a dryhouse, office, and office fixtures for a term of about fifteen months. The lease contained the following covenant:

"The lessee shall maintain all of the machinery and buildings of said mill in as good condition and repair as the same now are in and return the same to the lessor at the expiration of said lease in as good condition as the same are now

in, reasonable wear and tear excepted. . . . That he (lessee) will maintain all the said mill, machinery and buildings in as good condition and repair as the same are now in, and return the same to lessor at the expiration or termination of this lease in as good condition as the same are now in, reasonable wear and tear from ordinary use alone excepted."

About five months after the execution of the lease, the mill was entirely destroyed by fire. Upon defendant's failure to rebuild the mill or compensate for its loss, plaintiff brought suit for breach of covenant of the lease and, in his complaint, alleged that the fire was caused by the defendant's negligence.

On appeal by the defendant from an adverse judgment, the error assigned in that case had reference to an instruction given by the trial court to the effect that the covenant above quoted imposed an obligation on the defendant to rebuild the buildings and the mill in the event they were burned during his tenancy. In approving that instruction, this court held that the terms of the covenant constituted an express covenant to repair, and then defined the effect of such a covenant by stating the approved rule as expressed by Taylor on Landlord and Tenant (8th ed.), § 364, as follows:

" 'Under an express covenant to repair, the lessee's liability is not confined to cases of ordinary and gradual decay, but extends to injuries done to the property by fire, although accidental; and even if the premises are entirely consumed, he is still bound to repair within a reasonable time. And the principle applies to all damages occasioned by a public enemy, or by a mob, flood, or tempest. Thus, where the covenant is *to repair* in general terms, or *to repair, uphold and support,* or however otherwise phrased, if it undertakes the duty of repair, it binds the lessee to rebuild if the premises are destroyed. For this reason, and in order to afford some protection to the tenant, it is customary to introduce into the covenant to repair, an exception against accidents by fire, tempest, or lightning.' "

On the same subject, the court quoted the following paragraph from Wood on Landlord and Tenant (2d ed.), § 370:

" 'If a lessee covenants to repair and keep the premises in repair during the term, not excepting damage by fire or the elements, he is bound to rebuild them if burnt down by accident, negligence, or otherwise. It is of no importance how the covenant is worded; unless it is qualified, the lessee is bound to rebuild in case the buildings are destroyed by fire or other casualty during the term; the tenant, if the burden of the covenant rests upon him, or the landlord, if he is the covenantor, must rebuild. Thus, a covenant "to repair, uphold and support," or to "well and sufficiently repair," or to keep in repair and leave as found, or to "repair and keep in repair," to keep in "good repair, natural wear and tear excepted," to make "all necessary repairs," to deliver up "in tenantable repair," or to "deliver up the premises in as good a condition as they now are," all impose upon the covenantor the duty of rebuilding or restoring premises destroyed or injured by the elements.' "

The case at bar is stronger than the cited case, in that, here, the covenant of the appellant to keep the premises in good repair and surrender them in good condition was positive, regardless of the condition of the premises at the time the lease was executed, whereas, in the cited case, the tenant was required only to maintain and return the premises in as good condition and repair as obtained at the time of the execution of the lease. Although, in this case, the boiler cracked because of its exposure to the heat from the firebox, it is not here contended that the "damage by fire" exception contained in the lease is applicable to the situation with which we are presently concerned.

If, under the rule as above stated, a covenant to repair obligates a tenant to *rebuild* premises in the event they are utterly destroyed by fire or other casualty (in the absence of some expressed exception in the covenant), then for stronger reason the same rule would require him to *repair* such portion of the premises as has been only partly damaged by some fortuity.

In the later case of *Arnold-Evans Co. v. Hardung,* 132 Wash. 426, 232 Pac. 290, 45 A. L. R. 9, the situation was very similar to the one presented here, although in that case the question arose upon a cross-complaint by the tenant against the landlord, rather than upon a complaint by the landlord

against the tenant, for recovery of the cost of repairing a boiler located in the leased premises. The facts in the cited case were these: J. A. Hardung leased an apartment house to W. E. Bonza and wife for a term of one year. The lease contained a provision reading as follows:

"And It Is Hereby Agreed, that the parties of the second part [lessees] are to maintain and keep said building in good repair and return same at the expiration of this lease to the party of the first part [lessor], its heirs, administrators or assigns in as good condition as at the present time, excepting that first party will make repairs to the exterior of premises occasioned by reasonable use and wear thereof."

Early one morning in January, the boiler of the heating plant in the leased building was found to be leaking badly, and, on examination, it was discovered that the bottom of the boiler had rusted out, so that it was beyond repair, and that a new boiler was absolutely necessary. The building was then occupied by guests and tenants who required heat for their comfort and well being, and something had to be done immediately. Bonza, one of the lessees, telegraphed to Hardung, the lessor, a nonresident, advising him with regard to the situation, and then, without awaiting a reply to his telegram, ordered a new boiler installed for Hardung at an expense of $939.25. Thereafter, the heating contractor, not having been paid for the boiler, brought suit against both the lessor and the lessees. The lessees cross-complained against the lessor, asking that, if they were held liable to the plaintiff, they might have judgment over against the lessor. Upon the trial, the court found in favor of the plaintiff and against the *lessees,* who thereafter appealed.

In affirming the judgment, this court said:

"Appellants urge, and the evidence tends to show, that this was not an ordinary repair, since it was testified that with proper care the new boiler would last practically a lifetime, and authorities are cited which distinguish between repairs and renewals or replacements. But, as we read the covenant, it is not simply a covenant to make ordinary repairs. The words: 'to maintain and keep said building in good repair and return same at the expiration of this lease to the party of the first part, . . . in as good condition as at the present time, excepting that first party will make re-

pairs to the exterior of premises occasioned by reasonable use and wear thereof,' when construed as a whole, and effect given to every part, seem beyond cavil to bear only the meaning which the trial court evidently ascribed to them.

" 'It is the well settled common law rule that a tenant's general covenant to repair the demised premises binds him under all circumstances, even though the injury proceeds from an act of God, from the elements, or from the act of a stranger, and if he desires to relieve himself from liability for injuries resulting from any of the causes above enumerated, or from any other cause whatever, he must take care to except them from the operation of his covenant. Under this rule, if the tenant enters into an express and unconditional covenant to repair and keep in repair, or to surrender the premises in good repair, he is liable for the destruction of buildings not rebuilt by him, though the destruction may have occurred by fire or other accident, or by the act of enemies, without fault on his part.' 16 R. C. L. p. 1088, § 605."

In the concluding part of its opinion in that case, this court said:

"Though the law may seem harsh as applied to this particular case, yet, for the general good, it must be maintained, and landlords and tenants alike must be left to guard against unusual conditions by the terms of their contracts."

It is to be noted that in that case the covenant contained no exception of "reasonable wear," so far as the interior of the building was concerned, whereas, in the case at bar the covenant did except "reasonable wear." We will refer to that circumstance a little later herein.

In the recent case of *Anderson v. Ferguson,* 17 Wn. (2d) 262, 135 P. (2d) 302, this court reviewed the authorities on the subject at some length and referred to the *Armstrong* and *Arnold-Evans Co.,* cases, *supra,* as being the only cases from this jurisdiction bearing upon the particular subject. In the *Anderson* case, *supra,* the lease provided: "The lessees to repair said buildings *to suit their own purpose or use at their own expense"* (italics ours), and

" . . . to quit and deliver up the premises to the lessor . . . peaceably and quietly at the end of the term, in as good order, condition and repair as the reasonable use and wear thereof will permit."

Discussing the question of the general rule relative to general covenants to repair demised premises, and drawing its conclusions from the authorities cited, this court said:

"Thus, it appears to be the settled law in this state that an unconditional or unqualified covenant on the part of the lessee to maintain and keep premises leased by him in good repair or in as good condition as that existing at the time specified in the lease, and to return the premises at the expiration or termination of the lease in such equivalent condition, obligates the lessee to rebuild in case the buildings leased are destroyed by fire or other casualty during the term. So far as we have been advised, there is no statute in this state modifying this rule."

Although this rule was recognized and approved in the *Anderson* case, *supra,* it was nevertheless held not to apply to the particular lease there involved, because of the peculiar phraseology of the covenant above quoted. It was stated that the particular covenant was capable of more than one construction, and that in such situation the construction most favorable to the lessee is to be adopted; further, that, because of the harshness of the common-law rule, it should be applied only where the language of the lease clearly requires it.

In the lease here under consideration, there is no ambiguity in the phraseology of the covenants; the lease specifically states that the lessee agrees, at his [her] own expense, to keep the premises in good repair, to save the lessor harmless from any damage or claim of damage due directly or indirectly to the condition of the premises, and to quit and surrender the premises in good and clean condition (reasonable wear and damage by fire excepted). The language is clear and requires the application of the rule. Furthermore, in this instance, the harshness of the rule is not exemplified by a situation which would require the lessee to rebuild a building in its entirety, as would have been the result in the *Anderson* case, *supra,* if the rule had there been applied in all its rigor; here, the lessee is required only to repair certain equipment used by her in her operations under the lease.

In the recent case of *Yakima Valley Motors v. Webb Tractor & Equipment Co.*, 14 Wn. (2d) 468, 128 P. (2d) 507, the *Arnold-Evans Co.* case, *supra*, is cited with approval.

■   In her endeavor to escape the force and effect of the rule with reference to a general covenant to repair, appellant argues that the phrase "including the plumbing" appearing in the covenant after the word "premises," and before the words "in good repair" limits her obligation and requires her to make repairs to the plumbing only, or at least does not cast upon her the duty to repair the boiler, since neither the furnace nor the boiler is specifically mentioned in the lease. We cannot agree with that argument. The term "including," as used in the lease, is not a word of limitation or enumeration, but one of enlargement and signifies that something else is comprehended beyond the general language which precedes it. Under some circumstances, as where the context and wording of a written instrument make it clear that the term "including" is used in a restrictive sense, it will be given a limited effect, but there is nothing in the present lease to suggest that signification. On the contrary, to give it that effect here would be wholly unreasonable and antagonistic to the common understanding of the word. The context of the covenant here in question not only indicates that the word "including" was used as a term of enlargement, but also demonstrates that it would have been folly for the lessor to have used it in any other sense, and futile for the lessee to have asked that her obligation be expressly so limited.

■   The appellant makes a further contention in her brief to the effect that the damage to the boiler was due to "reasonable wear," or at least that the question was one for the jury. In our opinion, the contention is untenable.

The expressions "reasonable wear," "ordinary wear and tear" and similar phrases apply more naturally to the gradual deterioration resulting from use, lapse of time, and to a certain extent to the operation of the elements, but do not cover destruction, in whole or in part, of a structure by some sudden catastrophe. The occurrence here did not present a spectacle resulting from ordinary or reasonable

wear; it evidenced a sudden casualty, more in the nature of a catastrophe. The crack in the boiler occurred by reason of the boiler being subjected to extreme heat at a time when there was insufficient water within it. The result was a sudden occurrence, not a gradual deterioration.

Regardless of the absence of negligence on the part of the appellant, as established by the verdict of the jury, she is liable, under the terms of her covenant, for the expense necessarily incurred by the respondent for the repair of the boiler.

The judgment is affirmed.

BEALS, C. J., MILLARD, SIMPSON, and MALLERY, JJ., concur.

---

[1]Reported in 172 P. (2d) 481.