**MILWAUKEE LAND COMPANY,** an Iowa Corporation, Plaintiff,

v.

**BASIN PRODUCE CORPORATION,** a Washington Corporation, Defendant.

No. C-74-75.

United States District Court,
E. D. Washington.

June 10, 1975.

Dennis G. Opacki, James E. Nelson, J. Fred Simpson, David H. Boyd, Seattle, Wash., for plaintiff.

Darrell E. Ries, Ries & Kenison, Moses Lake, Wash., for defendant.

## MEMORANDUM AND ORDER

NEILL, Chief Judge.

Plaintiff, the landlord, filed this action against Basin Produce Co., the tenant, to recover $100,000.00 [1] as compensation for the destruction by fire of the leased premises. The jurisdictional basis of the action is not stated, but it is apparent from the face of the complaint that there is diversity under 28 U.S.C. § 1332. The parties agree that the law of the State of Washington should be applied. The case is now before the Court on cross-motions for Summary Judgment.

---

1. Paragraph 12 of the lease agreement limits defendant's liability to this amount.

The pertinent facts are not in dispute. Plaintiff owned a potato warehouse and a packing shed located adjacent to the tracks of the Chicago, St. Paul & Milwaukee railroad, southeast of Moses Lake, Washington. The premises were leased to defendant, a potato processing company, on August 11, 1967. Several modifications of this lease were made, the last of which extended the lease for a one-year term from April 1, 1973. On September 15, 1973 the main warehouse building was destroyed by a fire of unknown origin. Plaintiff subsequently demanded from defendant $100,000.00 and filed this action upon the refusal to pay.

The relevant provisions of the lease are attached as an appendix to this opinion. Defendant contends it is not liable for the damages because paragraph 4 of the lease is not an unconditional covenant to repair. Defendant further asserts that even if it had a duty to rebuild, the fulfillment of plaintiff's duty to rebuild the outer walls was a condition precedent to any liability by defendant. Plaintiff contends that paragraphs 6 and 7 of the lease are unconditional indemnity agreements, that paragraph 4 is an unconditional covenant to repair, and that there is sufficient evidence of negligence to preclude the granting of defendant's Motion for Summary Judgment.

*The Indemnity Agreements*

Paragraph 6 obligates the tenant to protect the premises from claims or liens " . . . arising from . . . anything done . . . by the [l]essee . . . " and binds the tenant to indemnify and save harmless the landlord from such claims or liens. The tenant further agreed to release and indemnify the landlord from claims stemming from the condition of the demised premises, except those attributable to the landlord's failure to make repairs mandated by the lease.

Paragraph 7 requires the tenant to indemnify and save harmless the landlord from claims resulting from " . . . any act or omission of the lessee, its employees or agents, or in anywise arising out of the operations or business of the [l]essee upon the demises premises . . . .".

When read in conjunction with paragraph 4, which attempts to divide the duties of repair, it is clear that paragraphs 6 and 7 do not involve the duties of the parties to repair. Paragraph 6 discusses the obligations of the parties in relation to claims made by third persons arising from the condition of the premises. Paragraph 7 discusses third person claims arising from actions or failures to act upon the premises. Both paragraphs utilize terms such as "release", "save harmless", and "indemnify" which are commonly employed in agreements that relate to claims made by others, rather than to claims by one party to an agreement against another. Therefore, it is apparent that paragraphs 6 and 7 are concerned only with liabilities of the landlord and tenant with respect to claims made by others and do not relate to duties to repair.

*The Duties to Repair Under Paragraph Four of the Lease*

Although the general rule is that ambiguities in leases are construed in favor of the tenant, *e. g. see Puget Investment Co. v. Wenck,* 36 Wash.2d 817, 221 P.2d 459 (1950), and in absence of a specific undertaking a tenant is generally held free from liability for destruction of premises by fire, sans tenant negligence, *e. g. see Armstrong v. Maybee,* 17 Wash. 24, 48 P. 737 (1897); 49 Am.Jur.2d, Landlord and Tenant § 923, many courts have reached a contrary result in construing covenants to repair. *See* anno. 45 A.L.R. 12 and 20 A.L.R.2d 1331.

American jurisdictions are in disagreement as to what type of covenant is necessary to impose upon a tenant a duty to rebuild. Some draw a distinction between covenants to repair and covenants to surrender while others find

such covenants to be identical in effect. All agree that a covenant to repair obligates the tenant to rebuild, but some courts have found that a covenant to surrender only requires a tenant to surrender the premises in a specified condition, but does not impose a duty to rebuild if the premises are destroyed through no fault of the tenant. The wording of these two types of covenants is very similar, each employing terms such as "keep and return in as good condition as", "return in as good . . .", "deliver in the same condition". Those jurisdictions that differentiate the two covenants distinguish a covenant to repair by the fact that such covenants are worded in such a manner that they indicate a duty of the tenant to maintain the premises during the course of the term as well as returning it in a certain state. *See* anno. at 45 A.L.R. 12, 20 A.L.R.2d 1331.

Washington cases appear to recognize a difference between covenants to repair and covenants to surrender. In *Anderson v. Ferguson*, 17 Wash.2d 262, 135 P.2d 302 (1943), the Washington Supreme Court stated that an unqualified covenant to repair imposes upon the tenant a duty to rebuild in case of non-negligent destruction of the premises by fire. Nevertheless, the Court found that the covenant in question, which required a return of the premises " . . . in as good order, condition and repair as the reasonable use and wear thereof will permit . . .", did not constitute a general covenant to repair because the covenant did not define any specific obligation of the tenant during the course of their term. In *Armstrong v. Maybee, supra,* the covenant at issue obligated the tenant to " . . . maintain . . . as good condition and repair . . . and return . . . in as good condition as the same are now . . .". The lease also required the tenant to maintain a night watchman on the premises. The Washington Supreme Court found that the covenant clearly indicated a duty on behalf of the tenant to maintain the premises during the course of the term and was therefore an unconditional covenant to repair. The Court impliedly recognized the difference between the two types of covenants by citing with approval *McIntosh v. Lown,* 49 Barb. 550 (N.Y.) which distinguished the earlier case of *Warner v. Hitchins,* 5 Barb. 666 (N.Y.) by finding that the covenant in *Warner* did not impose a duty upon the tenant during the course of the term.

Other Washington cases are consistent with the holdings of *Armstrong v. Maybee, supra,* and *Anderson v. Ferguson, supra.* In *Arnold-Evans Co. v. Hardung,* 132 Wash. 426, 232 P. 290 (1925) language requiring the tenant to " . . . maintain and keep . . . in good repair and return . . . in as good condition . . . excepting . . . repairs to the exterior . . . " was held to be a general covenant to repair. In *Publishers Building Co. v. Miller,* 25 Wash.2d 927, 172 P.2d 489 (1946), the Supreme Court found a covenant that obligated the tenant " . . . at his own expense . . . to keep the premises . . . in good repair . . . [l]essee agrees . . . to quit and surrender the premises in good and clean condition (reasonable wear and fire excepted) . . . " to be a general covenant to repair which made the tenant liable for the replacement cost of a boiler. The Washington State Supreme Court in *Puget Investment Co. v. Wenck, supra,* recognized that a general covenant to repair requires a tenant to rebuild after non-negligent destruction of the premises by fire, but the Court also found the rule to be harsh and said it should not be applied unless the language of the lease clearly requires it.

██ A fair reading of paragraph 4 indicates that it contains both a covenant to repair and a covenant to surrender. The first part of the paragraph states the tenant agrees to " . . . maintain, renew, and continuously keep in good repair all other portions of the main warehouse". The last part of the

paragraph indicates that the tenant is to surrender the premises " . . . in as good state of repair and condition as they now are, ordinary wear excepted". The effect of the combination of these two clauses is to make clear the fact that the tenant has obligations regarding upkeep of part of the premises during the term as well as at its end.

■ However, the existence of the tenant's covenant is not determinative in this action. Paragraph 4 also places upon the landlord the duty of "maintain[ing] [and] renew[ing] the foundations, roof and outer walls, excluding doors, windows and downspouts of the main warehouse . . .", while the tenant is responsible for " . . . all other portions . . .". While there is authority for the proposition that such language does not require the landlord to rebuild, *see* annotations at 38 A.L.R.2d 682 and 28 A.L.R.2d 446, such a result would be inconsistent with those cases that hold similar language imposes upon tenants a duty to rebuild. Therefore, the Court finds that paragraph 4 of the lease imposes duties to rebuild upon both parties.

■ Defendant contends that performance of the landlord's duty was a condition precedent to any obligation by the tenant to rebuild the interior. There is little, if any, reported authority on point, but in *Coward v. Gregory* (Eng.1866), L.R. 2 C.P. 153, it was held that a landlord's covenant to put the premises in repair and maintain them was a condition precedent to the tenant's duties concerning the interior. Simple reason supports such a conclusion because the physical necessities of reconstruction of the premises would require the building of the foundation, roof and outer walls before the interior work could be done. Therefore, the Court finds that the tenant did not become liable under the lease for any damages, in the absence of proof of negligence, because the plaintiff did not fulfill the condition precedent of completing its duties under paragraph 4.

*Res Ipsa Loquitur*

■ Plaintiff further asserts that defendant's Motion for Summary Judgment should not be granted because the affidavits and records on file provide a sufficient inference under the theory of res ipsa loquitur to present a prima facie case of negligence. Under the law of Washington res ipsa loquitur is only a circumstantial inference of negligence. *Hufford v. Cicovich*, 47 Wash.2d 905, 290 P.2d 709 (1955). Under the present state of the record res ipsa loquitur would not be applicable because there is no evidence in the record that the accident was of the type that normally does not occur in the absence of negligence. *See* anno. at 8 A.L.R.3d 974. However, the motions for summary judgment were primarily directed to the question of liability under the lease in the absence of proof of negligence, and there is scant evidence in the record on the question of negligence. Under these circumstances the best course of action is to grant defendant's Motion for Summary Judgment as to liability in the absence of negligence and retain for trial a possible claim of tenant's negligence. This being on the theory that the motions for summary judgment did not deal with the contention of negligence.

Wherefore, it is ordered:

1. Defendant's Motion for Summary Judgment is granted insofar as it relates to the liability of defendant in the absence of proof of negligence.

2. Plaintiff's Motion for Summary Judgment is denied.

## APPENDIX A

### Paragraph Four of the Lease

4. The Lessee accepts the demised premises, and all the improvements, fixtures, machinery and equipment thereon, in their present condition, and any and all facilities of the Lessor or the Railroad, their grantees and licensees, including overhead or underground fixtures and facilities located on the demised premises may be maintained and

operated as heretofore. The Lessor shall, at its expense, maintain and repair the foundations, roof and outer walls, excluding doors, windows and downspouts of the main warehouse located upon Parcel I of the demised premises. The Lessee shall during the term hereof, at its sole cost and expense, maintain, renew and continuously keep in good repair all other portions of the main warehouse and all other portions of the demised premises, and all improvements, fixtures, machinery and equipment located thereon. The Lessee agrees to keep the demised premises, and all structures thereon, in a neat, orderly and safe condition, and no signs or advertisements of any description shall be permitted to be painted or posted upon said structures or about the demised premises other than those of the business of the Lessee, and then only as shall be approved by the Lessor. Upon the expiration or sooner termination of this lease the Lessee shall surrender and return the demised premises, and all improvements thereon and all of the machinery and equipment included under this lease, in as good state of repair and condition as they now are, ordinary wear excepted.

## APPENDIX B

Paragraphs Six and Seven of the Lease

6. The Lessee shall and will protect the demised premises from and against any and all liens and claims of lien whatsoever, arising from or growing out of anything done or authorized to be done by the Lessee, and shall and will indemnify and save harmless the Lessor and its property from any and all such liens, claims of lien, and costs incident thereto. The Lessee shall, and hereby covenants and agrees that it will, release, indemnify and save harmless the Lessor from any and all liability, loss, damages and claims for damages to or destruction of property, whether real or personal, and injuries to any person or persons whomsoever, whether resulting in death or otherwise, attributable to the condition of the demised premises, excepting only those arising from the failure of the Lessor to make the repairs which it is required to make under the provisions hereof within a reasonable time after written notice so to do from the Lessee.

7. The Lessee shall, and covenants and agrees that it will, release, indemnify and save harmless the Lessor from any and all liability, losses, damages, and claims for damages to or destruction of property, whether real or personal, and injuries to any person or persons whomsoever, whether resulting in death or otherwise, caused by or resulting from any act or omission of the Lessee, its employees or agents, or in anywise arising out of the operations or business of the Lessee upon the demised premises or any portion thereof.