[No. 34880. *En Banc.* March 31, 1960.]

UNITED MUTUAL SAVINGS BANK, *Respondent,* v. ARTHUR RIEBLI *et al., Appellants,* WASHINGTON BUILDING COMPANY, *Respondent.*

WASHINGTON CAMERA MART, INC., *Respondent,* v. GEORGE HOERTRICH, JR., *et al., Appellants.*[1]

[1]Reported in 350 P. (2d) 651.

*Lycette, Diamond & Sylvester* and *James A. Andersen,* for appellants.

*Charles W. Johnson* and *Brooks K. Johnson,* for respondent United Mutual Savings Bank.

*Hodge, Mann & Peterson,* for respondents.

OTT, J.—October 30, 1954, the Washington Building Company leased "that certain store space known as 1025 Pacific Avenue," in Tacoma, Washington, to Donald H. Hutchins for an ice cream and soda fountain business. November 30, 1955, the lease was assigned to Arthur A. Riebli and George Hoertrich, Jr., with the consent of the building company. During the weekend prior to October 29, 1956,

a water pipe imbedded in the cementlike floor of the leased premises ruptured. Monday morning at 7:30 a. m., the maintenance superintendent of the building company discovered that the basement of the building had been flooded. The flow of water from the ruptured pipe was shut off by a valve which controlled the service of water to the leased premises. The water caused damage to some doors stored by the building company in a basement storeroom, to merchandise stored by the Washington Camera Mart in its basement storeroom, and to a rug on the floor in the basement safe-deposit vault lobby of the United Mutual Savings Bank.

The Washington Camera Mart brought suit against Riebli and Hoertrich to recover for its loss. The bank sued Riebli, Hoertrich, and the building company. The building company cross-complained against Riebli and Hoertrich for damages to its doors and for indemnity for any damages it might be required to pay to the bank. The causes were consolidated for trial.

The court entered judgment for both plaintiffs and also entered judgment for the building company on its cross-complaint. Riebli and Hoertrich have appealed.

The evidence disclosed, *inter alia,* (1) that the respondents' premises were damaged by water; (2) that the water came from a ruptured pipe imbedded in the cementlike floor of the premises leased by the appellants; (3) that the pipe was installed in 1947, with the consent of the building company, by a former tenant when he remodeled the premises, and had since remained untouched; (4) that water was supplied by the building company to the appellants' premises through a system of pipes which it maintained and over which it retained control, the water being piped to a reservoir on the top floor of the building and from there to the various parts of the building; (5) that the appellants were not assignees of Fox, who had installed the pipe, but were in possession as the assignees of the Hutchins lease, and (6) that the lease provided that the tenants had the duty to keep the leased premises in repair and, under cer-

tain conditions, to save the building company harmless from occupational liability.

The court predicated appellants' liability to the Washington Camera Mart and to the bank upon the doctrine of *res ipsa loquitur*. The court erred in applying the doctrine to the facts of this case.

■ Before the doctrine of *res ipsa loquitur* can be applied, exclusive control of the offending instrumentality by the appellants must be established by the evidence. In this regard, Prosser on Torts (2d ed.) 204, § 42, states the rule as follows:

"It is never enough for the plaintiff to prove merely that he has been injured by the negligence of someone unidentified. Even though there is beyond all possible doubt negligence in the air, it is still necessary to bring it home to the defendant. On this too the plaintiff has the burden of proof by a preponderance of the evidence; and in any case where it is clear that it is at least equally probable that the negligence was that of another, the court must instruct the jury that the plaintiff has not proved his case. . . .

"This element usually is stated as meaning that the defendant must be in 'exclusive control' of the instrumentality which has caused the accident. . . .

". . . It would be far better, and much confusion would be avoided, if the idea of 'control' were discarded altogether, and we were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it."

In *Morner v. Union Pac. R. Co.*, 31 Wn. (2d) 282, 294, 196 P. (2d) 744 (1948), this court said:

". . . one of the elements essential to the invocation of that doctrine [*res ipsa loquitur*] is that the party charged with actionable negligence must have sole and exclusive control of the agency or instrumentality which actually caused the injury. If there is no such exclusive control, or if the injury was caused, or may reasonably be said to have been caused, by the concurrent acts of two or more persons or agencies functioning independently of each other, the doctrine does not apply."

Accord, 1 Shearman and Redfield, Negligence (Rev. ed.) 153, § 56; 65 C. J. S. 1014 *et seq.*, § 220 (8).

In *Hogland v. Klein,* 49 Wn. (2d) 216, 298 P. (2d) 1099 (1956), we recognized that the requirement of control does not mean actual physical control, but refers to legal control or responsibility for the proper and efficient functioning of the instrumentality that caused the injury.

Under the facts of this case, was the offending pipe under the exclusive control of the appellants?

Respondents rely upon *Kind v. Seattle,* 50 Wn. (2d) 485, 312 P. (2d) 811 (1957). In the cited case, a water main was held to be under the "exclusive control" of the city, when it was installed by the city, maintained by the city up to and at the time of the accident, and the water was supplied by the city. See, also, *Klise v. Seattle,* 52 Wn. (2d) 412, 325 P. (2d) 888 (1958).

In the instant case, the appellants did not install the offending pipe. They did not select the kind or quality of pipe used. They had no control over the water supply. The evidence failed to establish the element of "exclusive control," which is a prerequisite to the application of the doctrine of *res ipsa loquitur.*

Further, the doctrine of *res ipsa loquitur* is based in part upon the theory that negligence will be presumed because the defendant either knew of the cause of the accident, or had the best opportunity of ascertaining the cause and, therefore, should be required to produce evidence in explanation. *Shay v. Parkhurst,* 38 Wn. (2d) 341, 229 P. (2d) 510 (1951); *Morner v. Union Pac. R. Co., supra; Lynch v. Ninemire Packing Co.,* 63 Wash. 423, 115 Pac. 838 (1911).

In this case, there was no proof that the appellants had prior knowledge of the cause of the accident or that they had the best opportunity to know of it. When they took possession of the premises, the imbedded pipe was in place and had remained there untouched during their occupancy.

There remains the question of whether the judgment in favor of the Washington Building Company and against the appellants can be sustained because of the following provisions of the lease:

"The Parties Hereto Further Agree, As Follows: . . .

"(2) Throughout the term of this lease, the Lessee will take good care of the demised premises and appurtenances, alterations and improvements, and will keep same in good repair, and at or before the end of the term will repair all injury done by the installation or removal of equipment and fixtures, it being understood that the Lessee shall have the right to remove equipment and fixtures; and, at the end of the term, the Lessee will quit and surrender the demised premises, with all alterations and improvements, in good order and condition, reasonable wear and damage by the elements excepted. . . .

"(6) The Lessor shall not be liable for damage caused the Lessee by bursting or leaking of any water, gas, or steam pipe by accident or by neglect of other tenants or occupants of the building or their employees. . . .

"(8) The Lessor shall have the right to enter the premises at reasonable times and intervals to examine the same or to make repairs or alterations. . . .

"(11) The Lessee agrees to use the leased premises as a careful and prudent person would use his own, and upon the expiration of the term to surrender the premises to the Lessor in as good condition as at the beginning of the term of this lease, save for wear and tear from reasonable and careful use. . . .

"(14) The Lessee shall keep, save and hold harmless the Lessor from any and all damages and liability for anything and everything whatsoever arising from, or out of the occupancy by, or under, the Lessee, the Lessee's agents or servants, and from any loss or damage arising from any fault or negligence by the Lessee, or any failure on the Lessee's part to comply with any of the covenants, terms and conditions herein contained, or otherwise, or whether it be caused by, or be due to, the failure of the Lessee to perform any of the covenants herein, expressed or implied, that are to be performed by the Lessee."

Respondents rely upon § 14, *supra*. Liability under that section of the lease arises upon (1) appellants' failure to comply with the terms of the lease, and (2) damages arising from or out of appellants' occupancy of the premises.

As to (1), it was not shown that appellants failed to comply with the terms of the lease. Regarding (2), we are of the opinion that, construing the contract as a whole, the parties intended that the appellants were obligated to

"take good care" of the leased premises during their occupancy, and to make a reasonable and careful use thereof. They were liable only for damage caused by unreasonable and careless use of the premises. The imbedded pipe in some manner ruptured during the appellants' occupancy. The fact of the rupture alone does not establish that the use of the premises by the appellants was unreasonable or careless. The burden of proving that the water damage was caused by appellants' failure to comply with the terms and covenants of the lease, or by their unreasonable use of the premises, was not met by the respondents.

 Nor does the covenant (§ 2, *supra*) which placed upon the appellants the duty to repair make them insurers of latent defects in the premises. The covenant to repair carries with it no more than the duty to repair known defects or defects which could have been discovered by the exercise of due care. *Martindale Clothing Co. v. Spokane & Eastern Trust Co.,* 79 Wash. 643, 140 Pac. 909 (1914); *Bernhard v. Reeves,* 6 Wash. 424, 33 Pac. 873 (1893).

 There is no evidence in the record before us that the defect was known to the appellants or that appellants, by the exercise of due care, could have discovered it. The proof established nothing more than a latent defect for which appellants assumed no contractual liability.

 Finally, respondents contend that the offending pipe was a trade fixture. Assuming, *arguendo*, that the pipe, at the time it was installed by the then tenant, Fox, was a trade fixture and so regarded by Fox and the owner of the building, it lost its identity as a trade fixture and became part of the building when it was leased by the owner as a part of the over-all premises to the appellants' assignor, Hutchins.

" 'The true criterion of a fixture is the united application of these requisites: (1) Actual annexation to the realty, or something appurtenant thereto; (2) application to the use or purpose to which that part of the realty with which it is connected is appropriated; and (3) the intention of the party making the annexation to make a permanent accession to the freehold.' " *Forman v. Columbia Theater Co.,*

20 Wn. (2d) 685, 695, 148 P. (2d) 951 (1944), quoting with approval from *Filley v. Christopher,* 39 Wash. 22, 80 Pac. 834 (1905).

 Applying these tests to the facts in the instant case, the pipe was securely imbedded in the concretelike floor, and was applied to the use of these premises as an ice cream parlor and soda fountain. The actual intention of Fox, who made the annexation, does not appear, but, from the above and from the fact that he did not remove it at the termination of his lease, we must presume that his intention was to make the pipe a permanent annexation to the freehold. Under these facts, it is clear that the pipe became a permanent part of the building company's water supply system and was leased as a part of the freehold to appellants' assignor.

For the reasons stated, the judgments are reversed, and the causes remanded with instructions to enter judgments dismissing the complaints and the cross-complaint.

WEAVER, C. J., HILL, DONWORTH, FINLEY, and FOSTER, JJ., concur.

HUNTER, J. (dissenting)—A more detailed statement of the facts is necessary to better understand the reasoning of this dissent.

The record discloses that the appellant lessees, in the conduct of their business, maintained and operated a motor-driven compressor as a part of their refrigeration equipment situated within the premises, which compressor required a constant supply of water for cooling purposes; that the lessees, in the conduct of their business, obtained water from the Building Company for various uses on their premises, for which they paid a monthly flat fee to the lessor; that they obtained their water supply by means of an entrance pipe through the floor of their premises, connected to the general building water supply system.

The testimony in the record, which the trial court was entitled to believe, discloses that immediately inside appellants' premises on the entrance pipe was a hand-operated control valve by which the flow of water beyond that point

could be turned off and on; that from that point on water was distributed to the various points of use within appellants' premises by plumbing installed by previous tenants; that in order to supply cold water to the appellants' refrigeration compressor, a pipe, connected with the other plumbing within the premises, was placed under the surface of the floor of their premises; that the floor was laid by a prior tenant; that the flow of water in the pipe was controlled by the same valve within the premises that controlled the flow through the rest of the plumbing; that one of the appellants, George Hoertrich, Jr., was the electrical contractor for the tenant who installed the floor and pipe, and did the electrical work incident to the installation of the compressor, which was the same compressor situated on the premises maintained and operated by the appellants, when the accident occurred on October 29, 1956. The record further shows that the pipe was installed on the floor of the premises by being laid upon or partially recessed therein, and was covered with a one̅ to two-inch terrazzo floor, which is a type of floor laid similar to concrete with the same hardening characteristics; that the original floor was of twelve-inch reinforced concrete, and beneath this floor there is an area of approximately two feet followed by a false ceiling suspended over respondents' premises. The space between the false ceiling and the concrete floor contains various utilities for the building. In its determination of the source of the escaping water, the trial court found that it resulted from a rupture in the pipeline in the terrazzo floor.

In view of the result of this dissent, it is necessary to discuss certain contentions of the appellants in addition to those considered by the majority. Hence, for continuity, all of the appellants' contentions will be discussed in order, without reference to the majority opinion.

Appellants contend first, that the evidence is insufficient to support the court's finding that the instrumentality causing the damage was from a rupture of the pipe in the floor of appellants' premises. I disagree. The building superintendent testified that the water was running through the ceiling directly beneath the appellants' premises when the

damage was discovered; that there was no other plumbing in that area except the appellants' plumbing; and that he immediately notified the appellants. The record shows that the appellants thereupon called a plumber who shut off the water at the valve through which the water flows into the appellants' plumbing from the line of the building supplying the water to appellants' premises. The water leakage promptly subsided. The plumber bypassed the pipe in the floor, which went to the appellants' compressor, with copper tubing to carry the water and there was no further difficulty encountered. The building superintendent further testified that, based on his years of experience in maintenance and plumbing work, he believed the break could be caused by a chemical reaction between the galvanizing of the pipe and the concrete floor.

Considering the testimony in its entirety and the inferences to be drawn therefrom, there is sufficient evidence to support the trial court's finding that the instrumentality causing the damage was a ruptured pipe in the floor of appellants' premises.

The appellants further contend the trial court erred in finding that the appellants had exclusive possession and control of the premises and the instrumentality causing the damage. The appellants contend the control was in the lessor. I believe an examination of the record discloses the contrary. The lease expressly provides:

"Throughout the term of this lease, the lessee will take good care of the demised *premises* and *appurtenances*, alterations and improvements, *and will keep the same in good repair*, . . . and, at the end of the term, the lessee *will quit and surrender the demised premises*, with all alterations and improvements, *in good order and condition*, reasonable wear and damage by the elements excepted." (Italics mine.)

The court found, as supported by the record, that the ruptured pipe was a part of the plumbing used exclusively in the operation of the appellants' business. The pipe could be used for that purpose only, and was not in any manner related to the use of the remainder of the building. The

ruptured pipe was clearly a part of, and appurtenant to the use of, the demised premises, which the appellants were bound to maintain and repair under the lease and over which they necessarily had control under these circumstances. The appellants argue, however, that they did not have exclusive control since they could not disturb the terrazzo floor without permission of the lessor, on the theory that it would constitute an alteration requiring the consent of the lessor, as provided in the lease. I disagree. The lease must be read in its entirety. The disturbing of the floor would only be an incident to the appellants' obligation to repair the pipe and would not be an alteration, since the restoration of the floor would be required under the provision of the lease providing for the surrender of the premises in good order and condition at the end of the term (reasonable wear and damage by the elements excepted).

The appellants further contend that the doctrine of *res ipsa loquitur* is not applicable in this case. The doctrine was recently considered by this court in the case of *Klise v. Seattle,* 52 Wn. (2d) 412, 325 P. (2d) 888 (1958). There we stated:

"Under our recent decision in *Kind v. Seattle,* 50 Wn. (2d) 485, 312 P. (2d) 811, the rule is:

" 'Where a plaintiff's evidence establishes that an instrumentality under the exclusive control of the defendants caused an injurious occurrence, which ordinarily does not happen if those in control of the instrumentality use ordinary care, there is an inference, permissible from the occurrence itself, that it was caused by the defendant's want of care. *Nopson v. Wockner,* 40 Wn. (2d) 645, 245 P. (2d) 1022. Legal control or responsibility for the proper and efficient functioning of the instrumentality which caused the injury and a superior, if not exclusive, position for knowing or obtaining knowledge of the facts which caused the injury, provide a sufficient basis for the application of the doctrine. *Hogland v. Klein,* 49 Wn. (2d) 216, 298 P. (2d) 1099. *When these circumstances are shown, the plaintiff has made a prima facie case, and it devolves upon the defendant to produce evidence to meet and offset the effect of the presumption. Hogland v. Klein, supra.'* " (Italics mine.)

828

In the instant case, finding of fact No. 9 reads as follows:

"That the Defendants, ARTHUR RIEBLI and GEORGE HOER-TRICH, JR., had exclusive possession and control of the premises and the instrumentality causing said damage, and that the cause of said occurrence has not been satisfactorily explained, nor have said Defendants shown that they exercised due care to prevent the happening of the occurrence or excused themselves for their failure to do so."

The above finding, which is supported by the record, shows that (1) the appellants had exclusive control of the instrumentality causing the damage; (2) that no showing was made by the appellants of their exercise of due care to prevent the occurrence causing the damage; and (3) that no explanation has been made by the appellants to excuse them from failing to exercise due care in the control and operation of the instrumentality causing the damage.

Under the facts in the instant case, the doctrine of *res ipsa loquitur*, as stated in the *Klise* case, *supra*, applies. The appellants have failed to produce evidence to offset the effect of the presumption of the appellants' want of due care and they should therefore be liable for the damage incurred.

The appellants contend the court erred in awarding judgment for damages to the building on the Building Company's cross-complaint against the appellants, and in awarding the Building Company a judgment against the appellants for any damages it may sustain as a result of the judgment obtained by the Bank against the Building Company and the appellants. I do not agree. The covenant under the lease expressly provides the lessees will hold the lessor harmless from any and all damages occurring to the lessor whatsoever, as a result of the lessees' use and occupancy of the premises. The lease states:

"The lessee shall keep, save and hold harmless the lessor from any and all damages and liability for anything and everything whatsoever arising from, or out of, the occupancy by, or under, the lessee, the lessee's agents or servants, and from any loss or damage arising from any fault or negligence by the lessee, or any failure on the lessee's part to comply with any of the covenants, terms and conditions

herein contained, or otherwise, or whether it be caused by, or be due to, the failure of the lessee to perform any of the covenants herein, expressed or implied, that are to be performed by the lessee."

The damage sustained by the Building Company, as alleged in the cross-complaint, and resulting from the judgment obtained by the Bank against the Building Company and the appellants, was a direct result of the lessees' use and occupancy of its premises, and the court was therefore correct in its ruling.

The appellants contend the court erred in awarding damages to the Washington Camera Mart for the loss of anticipated profits from the Christmas business of that year. The trial court was justified in finding that, as a result of the damage occurring on October 29, 1956, there was insufficient time for any of the stock of damaged merchandise to be replaced. The finding of lost profits was properly supported by the record, showing that the Camera Mart had been in operation since 1946, and that the Christmas seasons of 1955 and 1956 were comparable as far as general Christmas buisness was concerned.

Finding no error in the record, the trial court should be affirmed.

MALLERY and ROSELLINI, JJ., concur with HUNTER, J.