[No. 3050-4-III.   Division Three.   April 29, 1980.]

WASHINGTON HYDROCULTURE, INC., *Respondent,* v. FRANK PAYNE, *Appellant.*

*Charles C. Countryman*, for appellant.

*Charles F. Diesen, John A. Rossmeissl*, and *Velikanje, Moore & Shore*, for respondent.

ROE, J.—In 1975, Frank Payne leased "2 Model S–1100 'Magic Garden' Hydrophonic [*sic*] Units located on lessor's property" from Washington Hydroculture, Inc., in Sunnyside, Washington. The units were fiber glass greenhouses used in growing plants indoors. The following year, the greenhouses were substantially destroyed by fire. The lease provided that:

> 3. . . . During the term of this lease, lessee shall *maintain* said S–1100 unit; and, upon expiration of the term hereof surrender in as good a condition as it shall be when lessee takes possession thereof, except for ordinary wear and tear. [singular]

(Italics ours.)

Both parties moved for summary judgment on the issue of liability. The trial court ruled that lessee Payne was liable for damage to the buildings. At a subsequent trial on the issue of damages, the court held that the defendant was liable for the reasonable cost of returning the premises to the landlord in as good condition as when he leased them, less normal wear and tear. Lessee appeals the adverse summary judgment; Washington Hydroculture cross–appeals on the issue of damages. We affirm.

■ The law in Washington is well settled that, unless there is an agreement to the contrary, the inclusion of a general maintenance and delivery clause in a real property lease obligates the tenant to rebuild in case of fire. *Armstrong v. Maybee*, 17 Wash. 24, 48 P. 737 (1897). *See also Publishers Bldg. Co. v. Miller*, 25 Wn.2d 927, 933–38, 172 P.2d 489 (1946); *Carstens v. Western Pipe & Steel Co.*, 142 Wash. 259, 252 P. 939 (1927).

The court in *Anderson v. Ferguson*, 17 Wn.2d 262, 270–71, 135 P.2d 302 (1943), relied upon by the trial court, stated the rule:

> Thus, it appears to be the settled law in this state that an unconditional or unqualified covenant on the part of the lessee to maintain and keep premises leased by him in good repair or in as good condition as that existing at the time specified in the lease, and to return the premises at the expiration or termination of the lease in such equivalent condition, obligates the lessee to rebuild in case the buildings leased are destroyed by fire or other casualty during the term. So far as we have been advised, there is no statute in this state modifying this rule.

We can find no agreement between the parties which would change this general rule, nor are we persuaded by the authorities cited by the lessee. The court in *Anderson v. Ferguson, supra* at 271, although recognizing and stating the above rule, nevertheless construed a provision in a lease which did *not* "require the lessees to *maintain or keep* the premises in any particular condition whatever *during* the period of the term." Thus, the general rule did not apply in that case. Here, the lease specifically provides that the lessee shall *maintain* the premises and surrender them in as good condition as when the lessee took possession. Appellant's criticism of the above case is not persuasive.

*United Mut. Sav. Bank v. Riebli*, 55 Wn.2d 816, 350 P.2d 651 (1960), concerned the rupture of a pipe embedded in the concrete floor of a leased premises, causing damage to the furnishings therein. Construing that lease as a whole, the court determined that a general covenant to repair does not make the tenants "insurers of *latent* defects in the

premises." (Italics ours.) *United Mut. Sav. Bank v. Riebli, supra* at 823. Other statements regarding the liability are dicta because the case was only concerned with an unknown, undiscovered defect. In the case at bench, the issue is not defects in the property, but a fire of unknown origin. The tenant must bear the loss.

The lessee urges that the rental units were personal property or, even if they were not, that the rule on personal property as found in *St. Paul Fire & Marine Ins. Co. v. Charles H. Lilly Co.*, 48 Wn.2d 528, 535–37, 295 P.2d 299 (1956) (*St. Paul* II), *reversing St. Paul Fire & Marine Ins. Co. v. Charles H. Lilly Co.*, 46 Wn.2d 840, 286 P.2d 107 (1955) (*St. Paul* I) governs this case. That case involved the lease of a Scoopmobile, obviously personal property. *St. Paul* II enunciated the rule in Washington for bailment contracts. That rule is where the bailee of personal property has contracted to return the property in the condition received, except for normal wear and tear, or words to that effect, then if the subject matter of the bailment is destroyed without fault or negligence on the part of the bailee, any liability on his part for the loss must arise out of the specific words of the contract making him an insurer of the loss irrespective of fault. If the contract does not so provide, the bailee is not liable for nonnegligent loss or acts of God.

The dissent in *St. Paul* I (which became the majority in *St. Paul* II) quotes at page 847 *Perreault v. Circle Club*, 326 Mass. 458, 459, 95 N.E.2d 204 (1950):

> "In the absence of contract increasing the liability of a bailee, he is not liable for loss or damage occurring without his fault. . . . Greater responsibility can be imposed upon a bailee only by his express contract. . . ."

(Citations omitted.)

In this case we are not concerned with the bailment of the property. We are concerned with a lease which from its four corners is a lease of realty. The parties are referred to as "landlord and tenant"; the subject matter, though there is no legal description, is denominated "the premises." We

thus rely on the general rule for leases of realty and do not find *St. Paul* II persuasive authority for changing the common–law and well established real property rule in Washington.

Washington Hydroculture cross–claims on the issue of damages. The trial court apparently awarded damages for the depreciated value of the premises, while Washington Hydroculture claims the proper measure is not the value of the greenhouses before they were destroyed, but the reasonable cost of restoring them to the agreed condition. If only new materials can be used, the tenant is liable for their full cost.

▮ The correct measure of damages is the reasonable cost of returning the premises to the condition they were in at the commencement of the lease, less reasonable wear and tear, and not their market value. *McFerran v. Heroux,* 44 Wn.2d 631, 643, 269 P.2d 815 (1954) (dictum); *Yakima Valley Motors, Inc. v. Webb Tractor & Equip. Co.,* 14 Wn.2d 468, 473, 128 P.2d 507 (1942); *DeLano v. Tennent,* 138 Wash. 39, 45–46, 244 P. 273, 45 A.L.R. 766 (1926).

Testimony for Washington Hydroculture was that it would cost $31,403.96 to rebuild the greenhouses. On the other hand, experts for Payne stated the costs at only $13,904.77. On cross–examination Washington Hydroculture demonstrated that extra costs had not been considered by those witnesses. The trial court added these extra costs to Payne's bids, including the depreciated value of some equipment, and concluded the damages totaled $23,780.72.

▮ The lessor has not challenged any of the findings of fact, and they thus become the established facts of the case. *State Bar Ass'n v. Great W. Union Fed. Sav. & Loan Ass'n,* 91 Wn.2d 48, 586 P.2d 870 (1978). Our function is to determine whether such findings support the conclusions of law and judgment. *In re Bennett,* 24 Wn. App. 398, 401, 600 P.2d 1308 (1979).

The findings state the amount of damages on different items. The conclusion of law, that the lessee is liable to the

lessor for $23,780.72, follows from the findings of fact. The judgment of the trial court is thus affirmed.

MUNSON and McINTURFF, JJ., concur.

Reconsideration denied May 8, 1980.

Review granted by Supreme Court July 18, 1980.