[No. 47068–5.   En Banc.   October 22, 1981.]

WASHINGTON HYDROCULTURE, INC., *Respondent,* v. FRANK PAYNE, *Petitioner.*

*Charles C. Countryman,* for petitioner.

*Charles F. Diesen, Velikanje, Moore & Shore, Inc., P.S.,* and *James P. Hutton,* for respondent.

HICKS, J.—Lessor, Washington Hydroculture, Inc., brought a damage action against lessee, Frank Payne, for the cost of rebuilding two leased fiberglass greenhouses destroyed by fire. Summary judgment on liability was granted against lessee based on a provision in the lease commonly called a maintenance and delivery clause. There is no issue of fault, as this is an action on the contract.

The Court of Appeals affirmed the trial court. *Washington Hydroculture, Inc. v. Payne,* 26 Wn. App. 40, 610 P.2d 967 (1980). We reverse.

In 1975, Frank Payne leased two hydroponic greenhouses located on lessor's property from Washington Hydroculture, Inc. These greenhouses were over 120 feet long and about 26 feet wide and appear to have been affixed to the ground by some sort of foundation. The lease contained a general, unqualified, maintenance and delivery clause as follows:

> During the term of this lease, lessee shall maintain said [greenhouses]; and, upon expiration of the term hereof surrender in as good a condition as it shall be when lessee takes possession thereof, except for ordinary wear and tear.

The lease was prepared by lessor and, according to lessee's affidavit on the motion for summary judgment, was "not negotiated by the parties" nor did the parties ever discuss

"prior to execution of the lease, the risk of loss caused by fire."

The trial court did not inquire into fault and lessor admits that fault was unalleged and not at issue. The trial court denied lessee's motion for summary judgment and granted lessor's. The trial on damages resulted in an award of $23,780.72 to lessor.

There was no clause in the lease requiring lessee to insure the premises, however, lessee did have insurance on the contents. The insurance proceeds paid to lessee on the contents are almost the same amount as the amount awarded to lessor by the trial court.

The issue in this case is whether we should retain the rule requiring a tenant, regardless of fault, to rebuild leased premises destroyed by fire, where the tenant has entered into a lease containing a general maintenance and delivery clause with no exceptions other than normal wear and tear.

Petitioner/lessee asserts that the decision of the Court of Appeals in this case conflicts with our decisional law, specifically with *Anderson v. Ferguson,* 17 Wn.2d 262, 135 P.2d 302 (1943) and *United Mut. Sav. Bank v. Riebli,* 55 Wn.2d 816, 350 P.2d 651 (1960). Respondent/lessor asserts that the decision of the trial court and the Court of Appeals in this case is in accord with the common law rule, still effective in this and some other jurisdictions. Respondent/lessor also relies primarily on *Anderson* for its position. This confusion can be attributed to a harsh and outdated rule, the effects of which we have in the past attempted to avoid by reasoning around rather than changing.

There can be no dispute that the common law rule, and our early rule, was as stated by the Court of Appeals at page 42 in its opinion on this case:

> Thus, it appears to be the settled law in this state that an unconditional or unqualified covenant on the part of the lessee to maintain and keep premises leased by him in good repair or in as good condition as that existing at the time specified in the lease, and to return the premises at the expiration or termination of the

lease in such equivalent condition, obligates the lessee to rebuild in case the buildings leased are destroyed by fire or other casualty during the term.

Quoting from *Anderson v. Ferguson, supra* at 270–71.

One of the earliest cases to apply the rule in Washington was *Armstrong v. Maybee,* 17 Wash. 24, 48 P. 737 (1897), where plaintiff/lessor brought action against a lessee for breach of a covenant in a lease covering a shingle mill, house, office, machinery, and office fixtures, all destroyed by fire during the course of the lease. The covenant in that lease was worded as follows:

lessee shall maintain all of the machinery and buildings . . . in as good condition and repair as the same now are in and return the same . . . in as good condition as the same are now in, reasonable wear and tear from ordinary use alone excepted."

17 Wash. at 25.

The use of the word "alone" in the Armstrong lease favors the construction placed on it by the court, holding the lessee liable to rebuild. The *Armstrong* court's analysis of authorities and decisional law indicates that the slightest variation in wording can make the difference between the loss falling on the lessor or the lessee. The court intends to uphold the intent of the parties, as was stated in *Armstrong* (quoting from a Michigan opinion):

"In construing the covenants in a lease the cardinal rule is that the intention of the parties shall govern; and the courts will not extend or enlarge the obligation of the lessee beyond the plain meaning of the language used and the intention existing at the time it was made; and if there is not an express stipulation to the effect to restore buildings and other property leased, destroyed by casualties from fire or water, without fault or neglect on the part of the tenant, the loss must fall upon the landlord . . ."

17 Wash. at 28–29.

The court went on to hold against lessee, stating that

in the case at bar we are unable, from any fair reading of the whole lease, to find any doubtful language or any-

thing in the circumstances of the parties which would require other than one construction of the language used. 17 Wash. at 29.

In *Anderson v. Ferguson,* 17 Wn.2d 262, 135 P.2d 302 (1943), we approved the rule but avoided applying it, stating that the phraseology of the covenant to repair and deliver in that case, as compared to the language used in the particular lease under consideration in *Armstrong,* was different. The language of the covenant was as follows:

"The said lessee . . . agrees to quit and deliver up the premises . . . at the end of the term, in as good order, condition and repair as the reasonable use and wear thereof will permit. . . ."

17 Wn.2d at 264. The court found the above language did not require by its terms that the lessee maintain or keep the premises in any particular condition whatever during the course of the lease. Also, the premises did not have to be delivered in as good condition as they were in the beginning of the lease but only in as good condition as reasonable use and wear would permit. And the language did not designate a certain point in time for referencing the condition of the premises. "In any event," the court opined, "the common–law rule is so harsh that it ought not to be applied unless the language of the lease clearly requires it." 17 Wn.2d at 273.

In *United Mut. Sav. Bank v. Riebli,* 55 Wn.2d 816, 350 P.2d 651 (1960), the rule once again was retained, but avoided on the phraseology, and by denominating the cause of the damage a "latent defect". In that case a water pipe ruptured damaging personal property of the lessee, lessor, and third persons. The latter sued both the lessee and lessor, and despite the fact that the lease contained both a maintenance and delivery clause, and a hold harmless clause, the court was able to avoid application of this harsh rule. The lease provided that the lessee had the duty to keep the premises in good repair, and to quit and surrender the premises "in good order and condition, reasonable wear and damage by the elements excepted. . . ." 55 Wn.2d at

822. The hold harmless clause was clear:

> ". . . The Lessee shall keep, save and hold harmless the Lessor from any and all damages and liability for anything and everything whatsoever arising from, or out of the occupancy by, or under, the Lessee, . . . *and* . . . from any fault or negligence by the Lessee, or any failure on the Lessee's part . . . or otherwise, or whether it be caused by, . . . the failure of the Lessee . . ."

(Italics ours.) 55 Wn.2d at 822. The court held that neither the repair and delivery clause nor the hold harmless clause made the lessee insurer for a latent defect on the premises.

Although the general rule at common law was to construe a general repair and delivery clause as requiring a tenant to rebuild, the jurisdictions are split on the issue. *See* 51C C.J.S. *Landlord and Tenant* § 368(7) and § 412 (1968). It is a much criticized rule, most often on the basis that "repair" or "maintain" does not mean "rebuild". *See* Stoebuck, *The Law Between Landlord and Tenant in Washington,* 49 Wash. L. Rev. 291, 361–63, 1090 (1974); Decker, *Duties of a Tenant To Rebuild After He Has Covenanted To Repair,* 6 Iowa B. Rev. 52 (1940). Other jurisdictions have altered the common law rule on this basis. *See* cases and text in 1 M. Friedman, *Leases,* "Damage and Destruction of Leased Property," § 9.1 (1974):

> Some courts refused to follow the common law rule, and held that a covenant by the tenant to repair did not require the tenant to restore after a nonnegligent fire, this on the ground that one could "repair" only something in existence and that a covenant to repair could not require the creation of something new. This distinction between "repair" and "restore" rescued some tenants who had naively agreed to repair, with no suspicion of what the common law attributed to this covenant. However, a repair is a partial restoration and these terms do not necessarily present a clear contrast. Their difference may be of degree rather than of nature.

(Footnotes containing citations omitted.) Friedman, *Leases, supra* at 313.

██ The wording in the covenant in the instant case is not as clear as the wording in *Armstrong,* and although it

does not necessarily fall into the exceptions to the rule that were carved out in previous cases, we do not construe this provision as automatically imposing the duty to rebuild on lessee. The language seems to us to describe a duty to maintain as opposed to an obligation to rebuild. It is time that we abandon a rule imposing liability absent fault based on "magic" language, the import of which laymen, or indeed lawyers themselves, may not perceive. As we said in *Armstrong,* what controls in a lease is the intent of the parties at the time of its execution, and the plain meaning of the language used. Where lessor drafts the lease, ambiguities must be resolved in favor of lessee. *Armstrong v. Maybee, supra; Puget Inv. Co. v. Wenck,* 36 Wn.2d 817, 221 P.2d 459, 20 A.L.R.2d 1320 (1950). We will not extend the obligation of lessee beyond the plain meaning of the language used, and if there is not an *express* stipulation requiring lessee to rebuild properties destroyed without fault, the loss will fall on the landlord.

The plain meaning of maintain or repair is not synonymous with rebuild. "Repair" means "to amend, not to make a new thing", stated the Nebraska Supreme Court when abolishing the common law rule in that state in *Wattles v. South Omaha Ice & Coal Co.,* 50 Neb. 251, 69 N.W. 785 (1897). The Supreme Court of California made the same distinction in holding that a covenant to repair did not include the complete rebuilding after destruction by fire through no fault of lessee. *Realty & Rebuilding Co. v. Rea,* 184 Cal. 565, 194 P. 1024 (1920).

Lessee alleged by affidavit that lessor had advised him that the building was fireproof and that he was wasting his money to insure the contents. There is no insurance provision in the lease requiring lessee to insure the buildings; were there it would indicate an intent by both parties to place liability on lessee. Lessee's affidavit also states that the cause of the fire was defective wiring that he in no way altered during his tenancy.

Without inquiry into fault on the part of lessee or intent at the time of execution of the lease, and without language

*expressly* holding lessee responsible for rebuilding premises destroyed through no fault of his own, we cannot sustain the trial court. It defies reason and logic to hold lessee to a covenant containing words of art and magic language which lessor says we should construe as an "express covenant" to insure against acts of God and other casualties beyond the control of lessee. It is not express. "Maintain" does not mean "rebuild". One could agree to surrender premises in as good condition as when possession was taken in conjunction with a clause to maintain, and never contemplate their total destruction requiring rebuilding.

We hold that summary judgment is improper where, as here, intent is unclear. The case is remanded for trial in accordance with this opinion.

BRACHTENBACH, C.J., and ROSELLINI, UTTER, DOLLIVER, WILLIAMS, and DIMMICK, JJ., concur.

STAFFORD and DORE, JJ., concur in the result.